We're prepared to hear argument in the United States v. Allred. Mr. Booth, whenever you're ready. May it please the court. A prior conviction for witness retaliation in violation of 18 U.S.C. 1513A, now B1, qualifies as a violent felony under the ACCA's elements clause. The district court erred in concluding otherwise, and the judgment should be reversed. At the outset, we believe that the offense in 1513A, now B, is divisible into four different crimes. Causing bodily injury, damaging tangible property, or threatening to do either one of the two. And we believe- How is it four different crimes rather than, say, two, one of which is aimed at bodily offenses and one of which is aimed at property crimes? Those are the two fundamental different crimes, but there's also a threatening to do either one, so that makes it into four. But the point that you make is the one that I wanted to touch on this morning, is that those two crimes, causing bodily injury and damaging tangible property, are fundamentally two different crimes. And the reason is that a crime against the person and a crime against property have always been viewed as different crimes with different elements. They have different victims, they have different victims, and as a plus factor in this case, Congress actually defined a slightly separate actus reus for each one. They have different verbs. They have different verbs, and so that's one- One of the verbs for bodily injury is causes, and then the verb for property injury is damages. That is correct. That's one additional plus factor that exists in this particular case. I would also then point out, going from the text of the statute to the case law, that this court in Coffield has already defined the causing bodily injury variant, if it were, as an essential element of the offense. And we would submit that by process of elimination, if it is an element of the offense, then the damage to tangible property is also a separate offense. And then Mathis instructs that in determining whether an offense is divisible or not, you can take a quick peek at the indictment to see what offense the defendant was charged with. And if you look at it in this particular case- Is it necessary to do that under your argument? You have the separate verbs, and then you have the jury instructions that use the parentheticals. Is it necessary to reach that Mathis quick peek to do that? I would say it's not necessary in this case, unless you happen to rule against the government on the first two theories. Mathis said that you can take a quick peek if there was some ambiguity in both the case law and in terms of the statute. We don't believe that there is, but in the event you were to conclude to the contrary, we would say that you can take the quick peek. And when you add the quick peek to everything else, it is without doubt that this statute is divisible into four separate crimes. Now- Are you familiar with the Eighth Circuit's decision from Gillock, U.S. v. Myers? I am aware of that, and if that's the one that came out before the GVR, the case that came out before the GVR goes in our favor. The Supreme Court, however, GVR'd that case. I haven't seen the subsequent decision in that case. I will take a look at it when I go back, and if it turns out it's relevant, then I'll follow the 28-G letter with the court. But I did cite it in the earlier Myers decision in our case, which had to do with terroristic threatening. But whatever has to do with terroristic threatening in that case, our position would be this is statute-specific, and that in this case, these four offenses are- these are four divisible offenses. But the original- before the GVR, the original Eighth Circuit decision supports your argument. It does. It does do that, yes. But we- the government GVR'd that case on the grounds that the Eighth Circuit had gone beyond doing a quick peek for purposes of divisibility, and had apparently considered that on the merits. And so the government had taken the position it should be GVR'd without making a On our second point as to whether or not the causing bodily injury offense qualifies as a violent felony under the ACCA's Elements Clause, in Castleman, the Supreme Court held that a similar statute defined in terms of causing bodily injury necessarily requires the use of physical force. Since then, this court and virtually every other court of appeals that has decided the question has concluded that offense that is- that is defined in terms of causing bodily injury satisfies the ACCA's Elements Clause. Now, I'm going to go back to this court's recent decision in battle, which made a point that I would like to do in- rebut the arguments made by the district court and the defendant in this case. That where you have an offense that is defined in terms of causing bodily injury, the decisions in Torres-Miguel and in Middleton that required- which held that those particular crimes in those cases did not qualify under the Elements Clause because of a lack of causation, don't apply to a statute such as this one in which the statute is specifically defined in terms of causing bodily injury. So the Defendant's Act has to cause the bodily injury and that's why the contrary decisions in Torres-Miguel and in Middleton doesn't- do not apply. In the Middleton case, it seemed to me that there was a men's ray akin to negligence. And in this case, the men's ray is as intent to retaliate against any person. So you've got a very strong men's ray that's not negligent. It's intentionality. And the sentence is- it's differentiated on- certainly on that basis. Well, it's- you can distinguish Middleton on several basis. The problem about the men's ray point was that there was- the men's ray point was raised in Judge Gregory's opinion and then I believe in Judge Floyd's concurring opinion. So it's not entirely clear whether the men's ray point constitutes a holding of the court. I notice in battle, however, this court did say that in a case that involves intentional or knowing causing bodily injury in Middleton. We've had questions over whether it's a negligence or recklessness men's ray. But here, there's no question. This isn't a negligence or recklessness men's ray. It's an intent to cause bodily injury. And what you worry about in these cases is that some sort of offensive touching would qualify as a crime of violence. And all I'm suggesting to you is that when you have a men's ray like intent to retaliate against any person, that that kind of men's ray rules out the possibility of just an offensive or inadvertent touching. Well, I agree with you, Judge Wilkins. And I think that may have been something of the point that this court said in battle, which was a decision that came out just a couple of months ago. We agree with all of that. There's several ways to distinguish Middleton. One, it is a case involving an unusual involuntary manslaughter statute that didn't have causation because the defendant who sold the beer sold it to a first person who sold it to a second person who gave it to a third person who killed himself. So there was an indirect causation there that just didn't meet the use requirement under the Accus Elements Clause. But there's also a question, yes, to the extent that it could be committed recklessly, this offense requires knowing and then with intent to retaliate. So there's two actual intent requirements in this case. Excuse me. Go ahead. There's no issue on causation here. Well, there is no issue on causation, but the district court seemed to think that there was. I mean, at some point, that's why the district court relied on Middleton. That's the reason we took the appeal in this case. One thing I would like to mention. You don't get to look at the individual facts under the categorical approach. That's why I didn't put the facts of the underlying offense in my brief. It's in the PSR what the facts were in this particular case. PSR is in the Joint Appendix, and you can take a look at it. One thing I would like to mention to the court is the Tenth Circuit's recent decision in Bowen. And Bowen actually has two rulings, which is extremely favorable to us. And in that case, the Tenth Circuit held that this particular statute, the causing bodily injury element, does qualify under the Elements Clause of the 924C3A. So that's directly on point, and we urge you to consider it. The court did make a ruling that this statute is indivisible. And that was made because the United States Attorney and the defendant all agreed that it did. Nobody ever raised divisibility. Nobody raised divisibility. The Tenth Circuit specifically noted its opinion was caveated because of that. That is true, Judge Agee. That was footnote five of both the majority and the dissenting opinion. Because this came up on a Rule 28, and I did give this case citation to the defense attorney, this court has at least one case, Fernandez v. Keisler, which is at 502 Fed 3337 in footnote two, saying essentially, making the point that you do, that where a court assumes but does not decide a point, that assumption is not binding precedent. It's not binding precedent in the Tenth Circuit, and it's certainly not binding precedent in this particular court. And just one little additional point. We could not make a divisibility argument in this case under the statute. Because under the ACCA, the use requirement has to relate only to offense of physical force against a person. So this statute is indivisible because of the damaged personal property element. We lose. But in the Tenth Circuit, they were looking at the 924C3A statute, the crime of violence provision, that has the use of force against persons or property. And so that's why they could actually look at it in this case, whereas we're not making a, assuming the statute is not divisible, we win because we lose. If there are no further questions, we'd ask for the court to reverse the judgment. Judge Nima? Judge, I know we have no further questions. Ms. Driscoll, we're happy to hear from you. Thank you, Your Honor. Thank you. Your Honor, we would submit that this is not a divisible case. And that the statute, in U.S. v. Hemingway and the Fourth Circuit case from 2013, citing the DeKalb's court, that divisibility is only used in rare and limited statutes. That just because you have the conjunctive word, or, does not make it, in fact, divisible. And I think that that comes out of United States v. Royal, which is a 2013 Fourth Circuit case, and was again quoted in the Cornett, U.S. v. Cornett case, which came out in March of 2019. Isn't this crime indicted separately? I mean, aren't the charging documents focused either on personal retaliation or property damage? Well, I would submit that, as in the... Here it was bodily injury indictment, and as I understand it, the charging practice is not necessary, perhaps, but it's worth noting that the two forks in this crime are often charged separately and indicted separately, one or the other. Well, I would submit that oftentimes, when you have different means of committing a crime, it is indicted specifically towards that mean. So that when you are looking at something like the Cornett case, where they're looking at illustrative examples of how a burglary can happen, whether it happens in a watercraft, a railroad, or wherever... Why wouldn't causing bodily injury be an element rather than a means? Well, because... I would... I'm sorry, if you could repeat the question? Why wouldn't causing bodily injury be an element of a crime, rather than a means? Because we would... You have precedent saying causing bodily injury is an element. Well, I would submit that in this particular case, unlike most assault statutes where you assault someone to cause injury, in this case, it is that the... And I think you brought this up earlier, that it would be the mens rea, is that whatever harm is done to this person was done as a result of retaliating against them for being a witness. And I could give an example of how I think this could happen without having any sort of force used and it not being indirect either. So, for instance... What does that have to do with the distinction between element and means? I would submit... You may be going on to another point, but I thought that was Judge Wilkinson's question, and that goes to the threshold question of divisibility, as to whether or not you have separate elements or whether or not there's simply multiple means to accomplish one element of the crime. So, in a lot of these cases, particularly when you're looking at state statutes, you'll have state court decisions or state model jury instructions that will tell you what type of verdict the jury must reach in determining whether they can have a verdict that's unanimous, but not on any specific item within multiple items within a statute. We don't have that here with the federal statute, but we do have, as the government cites, model jury instructions that place the separate items, bodily injury and property damage, in separate parenthetical sections in the jury instructions. And we have a lot of precedent that says when you see that in a jury instruction, that's an indicator of an element. I'm not sure you responded to that in your brief. I would submit that in this particular case, the element that you're looking at is the retaliation portion. How did someone retaliate? And then there's different means in how they could have retaliated, and the broadness of it is really, and I think the district court opinion really goes to this, is to protect, they make it broad to protect government witnesses and the integrity of the court system. And so I would submit that what the element in that is, is the retaliation portion of it. And how that retaliation is done, and the different means in which that retaliation can be accomplished. Whether it's a threat, or whether it's bodily harm or property, or actually commits harm or property. Are you aware of any model jury instructions that would be different from the ones that the Third Circuit has, that the government cited in its brief? The district court talked about model jury instructions in its opinion. And in its opinion, it said that, and this might not go exactly to what you're talking about, because the district court stopped, it did a brief analysis on whether it was a divisible or indivisible statute, and then it decided that it was going to say that even if it is indivisible, whether or not it met to the crime of violence, and went through jury instructions in that analysis. And I think that's a little different than what you're asking. But in that, it talks about, and the district court talked about that in the model jury instructions, it isn't necessary that the defendant's conduct himself caused the bodily injury, that it was sufficient if you find that the defendant knowingly participated in some activity which caused the consequence or effect of injury. And I think that goes to the district court's point that the statute was written very broadly to encompass all sorts of conduct, not just the simple type of assaultive conduct where someone intends to touch you. What you worry about in these retaliation cases or assault cases is you worry that they may sweep in just incidental or offensive conduct, and not violent conduct. But the mens rea in this statute, and as Mr. Booth points out, it's essentially a double mens rea. You have knowingly in the beginning of the statute, and then you have intent to retaliate as the statute goes on. And it's kind of absurd to think that you have an intent to retaliate against a witness by a mere touching. I mean, that doesn't, that just as a matter of common sense, it doesn't hold up that you would intend to cause bodily injury and you would intend to retaliate by a mere offensive inadvertent touch. And that is what I think that our precedent indicates in Irby and Reed and Burns-Johnson, which is that causing injury, those terms causing injury involve more than the use of nominal force. So we really have to follow that stream of cases here, and it seems to match up with the elements clause or the force clause of the ACCA, because you can't read that statute and say, oh, there's a real danger here that an offensive or negligent or nonviolent conduct would be swept in. There's no danger, given this terminology, that that would happen. I would submit that that's true in the assault statutes, where it says the intent is to commit harm. That is not what the intent is in this statute. This is that whoever knowingly engages in any conduct and thereby causes harm with the intent to retaliate. And I would submit that that makes it different than what the assault statutes are. Specifically, I think it sweeps in all sorts of broad conduct that under Johnson would not be force and violence. Then you run into Duenas-Alvarez, which is, say, we're not to use our imagination to go to a far outlier, but we're to look at the center of gravity and the body of offenses at which a statute is aimed. Yes, sir. And I would believe that it could easily include lots of other... This is not a very commonly prosecuted type of statute in the federal courts. There isn't an enormous amount of case law on it. When it is prosecuted, it deals with a very serious offense, which is to try to maintain the integrity of our judicial proceedings by not allowing witnesses... We depend on witnesses, and we don't want witnesses to come in and participate in a judicial proceeding and then be the object of bodily injury or property damage, but particularly of bodily injury. And this statute is aimed at that. And so when I... You say it's not often prosecuted, but when it is prosecuted, it's for very serious offenses that go right to the heart of maintaining the integrity of the judicial system and its dependence upon witnesses and protecting them from violent harm and violent retaliation. And, you know, that's what this discussion is all about. And I come back to the point that it is just hard to imagine somebody intending to retaliate against a witness by saying, oops, and touching somebody on the shoulder. It just... It doesn't add up. Well, the statute doesn't allow that either. The statute requires the causation of bodily injury. And didn't Castleman say that every bodily injury is the product of force? Every bodily injury. Yes, but Castleman also came back and said that it can be through offensive touching and refused to go through whether every bodily injury rises to the force in Johnson. That's a different issue. The issue is whether, if you cause bodily injury, do you necessarily use force? And the court concluded that you do necessarily use force. The hook in Castleman was the word use of force. And use had to be more than negligent or more than an accident. It had to be deliberate. But as Judge Wilkinson has noted, in this case, there is not an element of negligent. When you intend to retaliate and you cause bodily injury, you're using force. And you're using it for a purpose that is deliberate. I would submit that what the district court relied on when they were looking at that issue was the model jury instructions, and specifically that it was not necessary that the defendant's conduct himself caused the injury, that it was sufficient if you find that the defendant,  So oftentimes, a lot of individuals facing federal trials are in custody. And I would submit that they could make a phone call and ask a brother or a friend to do property damage to a witness. And that property damage, say a tire being slashed. Well, that raises the issue of whether it's divisible. It seems to me if we leave that issue behind for the moment for the discussion of whether force is used, and assume for the purposes of discussion that it's divisible, we're left with the notion that the conduct was a knowing conduct, causing personal injury, causing bodily injury, with the intent to retaliate. Now, we looked at all the convictions. We found over 150 across the country. And they were all involved in use of the force, except one was a strange set of facts. But this is not a very unusual notion. I can't conceive of how you would retaliate against somebody and cause bodily injury where force wasn't involved. I can think of a negligent way that it could happen. Well, it could, but that's the use of force, and that goes to the mens rea. Castleman instructed we have to look at both words, the use and the force. And it concluded that all bodily injury is caused by force. Now, the use, they analyzed, required a deliberateness. And in this case, the mens rea, you have two mens reas, as Judge Wilkins pointed out. You have the knowingly engaging in conduct and causing bodily injury. That composite, with the intent to retaliate, a deliberateness. Yes, sir. Yeah, okay. But I would submit that the... That when looking at the use of force, of course, Castleman does stand for that indirect force. We'll meet that. But then when you look at what Castleman, the Middleton court says that Castleman did not support the argument that any form of bodily injury requires violent force. Yeah, but see, that... That really went to causation, though, didn't it? Give me an example of how you cause bodily injury and can do so without force. Somebody who causes somebody else bodily injury, as we understand bodily injury in the common sense of the word, has to have some kind of force applied to cause bodily injury. It's a destruction of portions of the body or damage to the portions of the body. When I was preparing for this, I came up with two examples of how that could happen. To cause bodily injury without force? Well, without the causation. I'm not asking a different question. Okay. I'm asking about how bodily injury can be brought about without force. And if you argue to the contrary, you're going to have to take Castleman head-on. Because Castleman went through all the examples of poisoning. They even suggested that if your interpretation were adopted, then pulling the trigger on a gun, that's not force of any significance to pull a trigger. It's the bullet that causes the injury. And so you start a chain of events, which is the indirect notion that they addressed. But we're not addressing that issue in this case. We're addressing whether if you cause bodily injury, do you have to be using force? And I think it's a common-sense proposition. And what the Supreme Court observed is that you do. Now, this can be done negligently. It can be done accidentally. But that is a different issue. That is addressed by the mens rea. Well, I would submit that in the mens rea, that in this case... Well, that's another argument. I was just getting back to the force argument, that when the statute requires bodily injury, we're already got force. Now the question is, are we using force in the sense that is there a deliberateness about the force? And that would be the mens rea. And that, in this case, you have to address a statute that says knowingly engaging in conduct and causing bodily injury with the intent to retaliate. And it would have to be a fairly clever argument to get around that mens rea. But maybe you have some example. I have what I... We didn't find any in the cases that were very persuasive. No, I did not find any. And if I did, I will alert the court. Here's what we said in Irby that... You may want to address something else before your time runs out. But here's what we said in Irby. It is hard to imagine conduct that could cause another to suffer bodily injury that does not involve physical force. That would seem to resolve what we've been talking about. Well, I would like to talk about the mens rea action. And just if I could briefly give the two examples that I had come up with of how you could cause bodily injury, you could meet all the elements of the statute. And how it could be... I don't think a far-fetched and far-flung example. One would be if you asked your... The defendant turned around and asked somebody else to harm a car, which would be the property of a witness. And that harm in the car, somehow slashing the tires or does something, causes the driver of the car, i.e. the witness, harm. That would be, I would say, fulfilling all the elements of the statute, and yet would not be sufficient to be forced under ACCA. The second would be if there was someone that was... Do you have a case like that? I did not find a case like that. I did not... We're entitled to engage in speculation and abstract concepts in interpreting the statute. I thought we've been advised several times to look at real cases and decide how these cases are applied and construed and instructed to the jury and that type of thing. I understand. And this was... That's why I started off by saying this has not been prosecuted as much as some of these other statutes that people... We found over 150 cases. That's a pretty good number. That was an inventive hypothetical. I liked it. But that would be part of the property crime going after the tires. But it would end up in someone being injured, and the witness being injured, and it could go under either one. Then you'd fall short under the mens re because you'd have to have an intent to retaliate against the person who causes bodily injury to another person. And it might run afoul of castle money as well, but I'm not sure that would be an intent to cause bodily injury, knowingly causing bodily injury to the person or intent to retaliate against the person. That would be a property damage case. But at any rate, those are not the facts before us. I doubt they will ever be the facts before us. As Judge Niemeyer says, we've been cautioned repeatedly not to stretch our imaginations onto the far horizon to come up with some conceivable, maybe hypothetical. But anyway... But it's a very creative hypothetical. I would submit that in that hypothetical, and I know I'm getting close to my time, but in that hypothetical... If the prosecutor wanted to charge that one, he'd just charge it under causing property damage. In my experience, the prosecutors usually charge things under the more egregious manner, and that behavior would have resulted in some sort of bodily injury. You've been fighting prosecutors for a while, I guess. Yes, I have. We thank you very much, Ms. Dreschel. Thank you to your honors. Mr. Booth, do you have anything you wish to say by way of rebuttal? No, based on the court's questions, I think that you made all the comments that I was going to make in rebuttal, so I'll simply rest on this, unless the court has any questions at all you would like to ask me. One thing, Judge Agee, about the Third Circuit jury instructions, there don't seem to be any 1513 jury instructions anywhere else, and that's the only reason the Third Circuit ones are cited by the district court defense attorney and myself. What about the model? I couldn't find it in the practice. I mean, the Matthew Bender one that's also cited actually supports us, too, because the Matthew Bender instruction, which refers, it requires the... essentially requires the judge to pick the variant in which he wants to instruct. In our Diaz case, we have concluded that that would be alternative elements when you have that in the instruction with the brackets. That is correct. That is in the Diaz case. That's correct. But in terms of trying to find cases in the federal practice and procedure, I just couldn't find any. Coffield, we have the... You have some instructions in Coffield. That's right, Judge Neiman. That dealt with the personal injuries separately. Didn't talk about the... That is correct. There are not that many prosecutions in there, so we would ask the court to reverse the judgment. Thank you very much. We thank you both, and we'll come down and recouncil.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, G. Steven Agee